**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**SHAKELA WILLIAMS,**

**Plaintiff,**

**vs.**                                                      **Case No.  1:17cv71-MW/CAS**

**NANCY A. BERRYHILL, Deputy
Commissioner for Operations,[1]**

**Defendant.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

This is a Social Security case referred to the undersigned United

States Magistrate Judge for a report and recommendation pursuant to 28

U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court

pursuant to 42 U.S.C. § 405(g) for review of the final determination of the

Acting Commissioner (Commissioner) of the Social Security Administration

denying Plaintiff's Title II application for period of disability and Disability

Insurance Benefits (DIB) and Title XVI application for Supplemental

Security Income (SSI).  After careful consideration of the entire record, it is

---

[1] It would be helpful if Defendant's counsel could state Ms. Berryhill's current
official position.  *See, e.g.*, <u>Dennerline v. Berryhill, etc.</u>, No. 1:17-cv-02596-JMS-MJD, at
n.1, 2018 WL 2440185, at 1 (S.D. Ind. May 31, 2018)

respectfully recommended that the decision of the Commissioner be affirmed.

### I. Procedural History and Facts

On July 5, 2012, Plaintiff filed an application with the Social Security Administration for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act, and an application for Supplemental Security Income Benefits (SSI) pursuant to Title XVI of the Social Security Act.  Tr. 18, 297, 300.[2]  The applications alleged disability beginning on June 9, 2011, based on manic depression, bipolar disorder, post-traumatic stress disorder, insomnia, and borderline schizophrenia. Tr. 86.  The claims were denied initially on November 13, 2012, and on reconsideration of December 20, 2012.  Tr. 18, 147, 153, 161, 167).  After Plaintiff requested a hearing, a video hearing was held on January 7, 2015, and April 17, 2015, before an Administrative Law Judge (ALJ) presiding from Jacksonville, Florida.  Tr. 71-84; 33-70.  Plaintiff Shakela Williams appeared in Gainesville, Florida, with counsel.  Psychiatrist John P. Schosheim, M.D., and impartial vocational expert Ronald Spitznagel also testified.

---

[2] Citations to the transcript/administrative record (ECF Nos. 10, 20) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

The ALJ issued a decision on July 23, 2015, finding Plaintiff is not disabled and denying benefits. Tr. 18-27. The Appeals Council denied review on January 13, 2017. Tr. 1-4. Thus, the decision of the ALJ became the final decision of the Commissioner and is ripe for review. Accordingly, Plaintiff, appearing by counsel, filed a Complaint for judicial review pursuant to 42 U.S.C. §§ 1381, *et seq.,* and 42 U.S.C. § 405(g). *See* ECF No. 1.

### A. The Hearing

At the hearing commenced on January 7, 2015, Plaintiff, appearing with counsel, testified that she is 37 years old and had some college education. Tr. 74-75. She was in the military for an unstated period of time and her last job was, to her best recollection, at Subway prior to June 2011. Tr. 75. She had previously worked as cashier at Long John Silver's restaurant, Wendy's, and Krispy Kreme. Tr. 75-76. She testified she was fired from her last job because she failed go to work due to depression. Tr. 77. She said she believed her depression resulted from having been molested as a teen, and that she did not like to be around people. *Id.*

Plaintiff testified she stopped drinking alcohol shortly before the hearing, although she had consumed alcohol since age 12. Tr. 77-78. When she was drinking, she would drink beer, liquor, and sometimes

moonshine.  She said she could drink a case of beer a day.  Tr. 78.  She

testified she has smoked marijuana every day since she was age 17.

Tr. 79.  She said she continued to drink and to smoke marijuana against

advice of her doctors because she thought it "helps" her appetite and helps

calm her.  Tr. 79-80.  She used cocaine from age 23, but quit about three

years earlier.  Tr. 81.  Plaintiff testified she is currently homeless and will

"lay on her cart" most of the day.  Tr. 80.

She said she was treated at Meridian Behavioral Health Care after

she attempted suicide, which she attempted four times.  *Id.*  She also said

she hears voices, sometimes every day, telling her to hurt herself.  Tr. 80-

81.  She testified she cannot live with anyone because she cannot get

along with people.  She has been told by people they cannot deal with her

attitude or the way she talks to them.  Tr. 81-82.

Counsel presented a legal argument to the ALJ that even without the

alcohol and substance use, Plaintiff still has schizoaffective disorder and

bipolar disorder.  Tr. 82-83.  Based on an argument that the Meridian

records were not sufficient to show the affective disorder or bipolar

disorder, counsel asked the ALJ to obtain more information from a

consultative examiner, and the ALJ indicated he would make a decision as

soon as possible.  Tr. 83.  An impartial vocational expert did not testify at the January 7, 2015, hearing.

The hearing was recommenced on April 17, 2015, at which psychiatrist John Schosheim, M.D., testified that Plaintiff has bipolar disorder, alcohol abuse, cannabis dependency, anxiety disorder, and post-traumatic stress disorder (PTSD).  Tr. 35.  He opined that Plaintiff's impairments meet Listings 12.04 for affective disorder, 12.06 for anxiety disorder, and 12.09 for polysubstance disorder.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 35-36.  He testified that her alcohol and substance use were "material" to her problems, and if she stopped her alcohol and substance use, he was not sure if she would meet the Listings. Tr. 36-37.  He said the alcohol and marijuana increase her anxiety and affective disorder because they are depressives.  Tr. 36-37.  He opined that, within a reasonable degree of medical certainty, if she stopped her heavy alcohol and substance use, she would have a significant improvement.  Tr. 38

When asked by Plaintiff's counsel whether drinking alcohol would reduce Plaintiff's hallucinations and improve her schizoaffective diagnosis,[3]

---

[3] Dr. Schosheim clarified that he only saw one reference in the records to schizoaffective disorder and it was referring at the time to Plaintiff's bipolar disorder, "so I would say bipolar disorder."  Tr. 42.

Dr. Schosheim testified that it does not.  Tr. 39.  He testified, "if you drink, you have more visual hallucinations" and more auditory hallucinations.  *Id.* He agreed with Plaintiff's counsel that when a person is consuming alcohol, it is not medically possible to distinguish the signs and symptoms arising from the schizoaffective disorder, anxiety, and PTSD from the signs and symptoms experienced because of the alcohol and marijuana.  Tr. 40.  He explained, "You can't determine that because she's always been using it, always using and in fact, there's no way of telling that she would even have the disease process if she was sober."  Tr. 40-41.  He also agreed that people with psychosis often have difficulty in the workplace when they are hearing voices and when they are manic.  Tr. 43-44.  Their condition could cause them to make inappropriate statements to people, and engage in other inappropriate conduct.  Tr. 44.  He agreed that people diagnosed as bipolar who have symptoms of depression often have sleeping difficulty and problems with self-care.  Tr. 45.  He agreed that people diagnosed with PTSD can have anxiety and be defensive.  *Id.*  If a person had sexual trauma, they can become nervous, anxious, and depressed in situations that bring their trauma to mind.  Tr. 45-46.  If that were to occur in the workplace, it could take anywhere from some minutes to hours for the person to return to normal calm.  Tr. 46.

As for Plaintiff's anxiety disorder, Dr. Schosheim testified that symptoms can include palpitations, shortness of breath, hypervigilance, fear of doom, and temperature variations. Tr. 47. He said some people can perform in the workplace successfully with anxiety disorder, and that medication will sometimes calm them from a spell fairly quickly; or they may need to find a quiet place for a period of time. Tr. 48. If the person had no access to medication, he opined that a "significant" anxiety attack could take hours to resolve. Tr. 49-50. He agreed that people who do not drink alcohol or smoke marijuana can have bipolar disorder and anxiety disorder. Tr. 50.

Dr. Schosheim was asked what limitations Plaintiff would have in the workplace if she stopped alcohol and substance use. Tr. 53. He opined that her social limitations would be in the mild range. In terms of attention, persistence, and pace, her workplace limitations would be in the mild to none range. T. 53. He opined there would be no decompensation. *Id.* He testified, "I don't think there would be much affect (sic) to [this person's] life at all if they weren't drinking. No, I don't think so. Or without using pot. I mean I think the pot and the alcohol are significant triggers for the disease process we're talking about." Tr. 54. He also opined, "I'm not sure she would even need to have medical control if she wasn't using the alcohol

and drugs. I don't know if she would have symptoms at all if she wasn't using the alcohol and drugs. So she would maybe not need any medications or she might need mild medication . . . ." Tr. 55. He testified that 90 to 100 percent of patients with bipolar or schizoaffective disorder need medication, but he cannot determine that the alcohol and drugs have not created the diagnosis of Plaintiff's conditions. Tr. 56.

Plaintiff appeared at this April hearing and testified that she was prescribed medication for her bipolar disorder, hallucinations, anxiety, and PTSD by a psychiatrist at Meridian Behavioral Healthcare, and was given samples to take. Tr. 57. She said when she took the sample medications, they sometimes helped her symptoms, although the medication made her feel kind of "zombified." Tr. 58, 63. Plaintiff testified that she did not continue with prescribed medications for the years 2011 to 2015, however, because she could not afford them. Tr. 58. Plaintiff denied that her symptoms were reduced during times that she had stopped drinking and stopped smoking marijuana, and that when she used those substances her symptoms were sometimes better. Tr. 58, 60-61. She testified that she is still using marijuana five days a week and still drinking about eight 24-ounce beers a day. Tr. 60.

Impartial vocational expert Ronald Spitznagel testified that Plaintiff's past work was as a fast food worker, described in the DOT code number 311.472-010, as light work, SVP 2.  Tr. 63.[4]  Her past work also fell into the category of fast food worker, DOT code 311.472-010, light, SVP 2; cook, fast food, DOT code 313.874-010, medium work, SVP 5; waitress, DOT code 311.477-030, light work, SVP 3; and stock clerk, DOT code 299.367-014, heavy work, SVP 4.  *Id.*  Assuming a person with the same age, education, and work experience as Plaintiff, limited to with a light residual

---

[4] The Dictionary of Occupational Titles (4th Ed., Rev. 1991), is one of the examples of sources that the ALJ may rely on for job information.  *See* SSR 00-4p; 20 C.F.R. § 404.1566(d).  The ALJ may also rely on a vocational expert or other specialist.  *See* § 404.1566(e).  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, Specific Vocational Preparation (SVP), 1991 WL 688702.  An SVP of 2 allows for preparation time of "[a]nything beyond short demonstration up to and including 1 month," an SVP of 3 allows "[o]ver one month up to and including 3 months," an SVP of 4 allows for "over 3 months up to and including 6 months," and an SVP of 5 allows for "[o]ver 6 months up to and including 1 year."  *Id.*  Skilled work is work that requires judgment and tasks such as reading blueprints, making computations, and dealing with ideas at a high level of complexity.  20 C.F.R. § 404.1568(c).  Semi-skilled work is work that needs some skills but does not require doing the more complex work duties.  20 C.F.R. § 404.1568(b). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  Unskilled work corresponds to an SVP of 1-2 whereas semi-skilled work corresponds to an SVP of 3-4. Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  Medium work requires lifting no more than 50 pounds at a time and carrying of objects up to 25 pounds.  § 404.1567(c).  Heavy work involves lifting no more than 100 pounds at a time and carrying of objects weighting up to 50 pounds. § 404.1567(d).

functional capacity, the vocational expert testified that the person could perform the past work as fast food worker and waitress.  Tr. 63-64.  On cross-examination, the vocational expert testified that if the person were to miss more than one day of work per month, they would not be able to maintain competitive employment.  Tr. 64-65.  He said this is not a factor addressed by the DOT, but is within his experience and that his other testimony was consistent with the DOT.  *Id.*  He testified that a pattern of tardiness, rudeness, inappropriate remarks, and insubordination would not generally be tolerated.  Tr. 66-67.  He doubted that an employee who is emotionally labile, exhibiting emotions such as crying, would be tolerated.  Tr. 68.  An employee who tells coworkers they hear voices or gives evidence of hallucinations would not likely be tolerated.  *Id.*

## B. The Decision of the Administrative Law Judge

In the decision issued on July 23, 2015, the ALJ found that Plaintiff met the insured status requirements of Social Security through September 30, 2012.  Tr. 20.  Plaintiff has not engaged in substantial gainful activity since June 9, 2011, the alleged onset date.  Tr. 21.  The ALJ found that Plaintiff has severe impairments: bipolar disorder, post-traumatic stress disorder, and poly-substance use.  *Id.*

Using the special technique for the analysis of mental disorders, the ALJ found that Plaintiff's impairments meet the requirements of Listings 12.04, 12.06, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* The ALJ explained that Plaintiff's mental disorders meet the criteria of "Paragraph A" because her symptoms include appetite disturbance, sleep disturbance, difficulty concentrating, hallucinations, thoughts of suicide, and recurrent intrusive recollections of traumatic experience.  *Id.*  The ALJ found that Plaintiff met the criteria of "Paragraph B" because she has at least two "marked" limitations or one marked limitation and "repeated" episodes of decompensation.  Tr. 22.  The ALJ explained that in activities of daily living, Plaintiff has moderate restriction—a November 2012 consultative psychological examination disclosed that she was homeless, showered at the homeless center, ate at charities, visited others downtown, played dominoes, went to the library when it rained, and stayed in her tent. Tr. 21 (citing records at Tr. 781-83).  The ALJ found Plaintiff had marked difficulties in social functioning in that she had difficulty getting along with people, does not like being around people, and believed people were out to get her.  *Id.*  With regard to concentration, persistence, and pace, the ALJ found that Plaintiff has marked difficulties, in that her November 2012 psychological examination notes indicate she is frequently distracted and

has difficulty finishing tasks.  *Id.*  In making these findings, the ALJ gave

Dr. Schosheim's testimony great weight.  Tr. 22.

The ALJ concluded that if Plaintiff stopped her substance use in

2011, she would continue to have a severe impairment or combination of

impairments and her remaining limitations would cause more than a

minimal impact on her ability to perform basic work activities.  *Id.*  The ALJ

explained that, in determining the extent to which any mental limitations

would remain if the substance use was stopped, he considered "Paragraph

B"—the four broad functional areas set out in the disability regulations for

evaluating mental disorders—and Listing 12.00C of the Listing of

Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  The ALJ

relied on Dr. Schosheim's testimony in finding that Plaintiff stopped her

substance use, she would have no more than mild limitation in the areas of

daily living, social functioning, and maintenance of concentration,

persistence, and pace.  In the fourth area of decompensation, according to

Dr. Schosheim, Plaintiff would have no episodes of decompensation if her

substance use stopped.  *Id.*

Also based on Dr. Schosheim's testimony, the ALJ found that

because the remaining mental limitations would cause no more than mild

limitation in any of the first three functional areas and no limitation in the

fourth area, they would be non-severe if Plaintiff stopped her substance
use.  Tr. 22.  Also based on Dr. Schosheim's testimony, the ALJ concluded
that if Plaintiff had stopped the substance use in 2011, which date she
alleged as the onset of her disability, she would not have an impairment or
combination of impairments that meets or medically equals any of the
Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 23.

The ALJ determined that Plaintiff had the residual functional capacity
to perform a full range of light work.[5]  Tr. 23.  In making this determination,
the ALJ cited Plaintiff's testimony that she served in the military reserves
and has worked at fast food restaurants, but was fired from her last position
because of attendance problems she attributed to her depression.  *Id.*  The
ALJ cited testimony that Plaintiff has used alcohol for 25 years and smokes
marijuana daily even though she has been advised by her doctors to stop

---

[5] Residual functional capacity is the most a claimant can still do despite
limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the
relevant evidence including the claimant's description of his or her limitations,
observations by treating and examining physicians or other persons, and medical
records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20
C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at
*12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term '*residual functional capacity
assessment*' describes an adjudicator's finding about the ability of an individual to
perform work-related activities.  The assessment is based upon consideration of all
relevant evidence in the case record, including medical evidence and relevant
nonmedical evidence, such as observations of lay witnesses of an individual's apparent
symptomatology, an individual's own statement of what he or she is able or unable to
do, and many other factors that could help the adjudicator determine the most
reasonable findings in light of all the evidence.").

drinking and using marijuana.  *Id.*  The ALJ noted that Plaintiff has

attempted suicide four times and hears voices.  *Id.*

The RFC determination was also based on testimony of

Dr. Schosheim, which the ALJ cited for the finding that if Plaintiff stopped

all drug and alcohol abuse in 2011, she would not meet the Listings, and

would likely have seen a real improvement in her mental condition.  Tr. 24.

The ALJ also cited Plaintiff's testimony that her prescribed medications

were partially effective, and that records from Meridian Behavioral

Healthcare showed Plaintiff's symptoms varied from moderate in 2011, to

serious in 2012, to major in 2014, to mild in February 2015, when she was

noted as being noncompliant with her medications.  Tr. 24 (citing records at

Tr. 492, 764, 785, 803, 821).  A November 2012 consultative psychological

examination by William Beaty, Ph.D., indicated the Plaintiff reported manic

depression, bipolar disorder,[6] PTSD, insomnia, and borderline

schizophrenia.  Tr. 24-25 (citing records at Tr. 781-83).  Plaintiff reported

being homeless since 2008.  The ALJ cited notes showing Plaintiff's mood

was depressed and her affect flat, but she was fully oriented, had intact

thought processes, with some paranoia but no delusions, hallucinations, or

---

[6] Manic Depression and Bipolar Disorder are names for essentially the same disorder.  *See* https://www.nimh.nih.gov/health/topics/bipolar-disorder/index.shtml (last visited May 31, 2018).

perceptual disturbances.  Tr. 25 (citing records at Tr. 782).  The ALJ noted that in November 2012, Ronald Chase, M.D., reviewed the records for the State agency and opined that Plaintiff could perform simple tasks, which opinion was affirmed by George Grubbs, Psy.D., in a review performed in December 2012.  *Id.* (citing records at Tr. 113-18, and Tr. 137-44).  The ALJ noted that jail records from August 2011 cleared Plaintiff for full work.  Tr. 15 (citing records at Tr. 545).

The ALJ noted that the record contains evidence of Plaintiff's non-compliance with prescribed medication and substance avoidance, which provides a basis to conclude a claimant is not disabled if no good reason for the non-compliance is shown.  Tr. 25 (citing 20 C.F.R. 404.1530(b)).  The ALJ found that Plaintiff's substance abuse is a contributing factor material to the determination of disability because she would not be disabled if she stopped substance use and because the substance use disorder is a contributing factor material to the determination.  Tr. 26.

The ALJ concluded that there is no medical opinion of record that Plaintiff would be disabled or unable to perform work under the RFC found by the ALJ by virtue of her remaining impairments in the absence of substance use.  Tr. 25.  The ALJ gave significant weight to Dr. Schosheim's opinion that Plaintiff would have only mild limitations in the

absence of substance use and the opinions of Drs. Chase and Grubbs that Plaintiff could perform simple and routine tasks.  *Id.*  Relying on the testimony of the vocational expert, the ALJ found that Plaintiff would be able to perform her past relevant work as waitress and fast food worker, which does not require performance of work-related activities precluded by the RFC Plaintiff would have if she stopped the substance use.  Tr. 26.

In conclusion, the ALJ found that based on the application filed on July 5, 2012, Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act.  Tr. 27.  The ALJ also found that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act, and is not entitled to Supplemental Security Income.  *Id.*

**II. Legal Standards Guiding Judicial Review**

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); <u>accord Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[7]  The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but

---

[7]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).[8] Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). An individual is entitled to disability insurance benefits if he or she is under a disability prior to the expiration of his insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

Pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v), the Commissioner analyzes a claim in five steps. Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the claimant

---

[8] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations herein should be considered to refer to the appropriate parallel provision.

must show she has a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).

Step two is a threshold inquiry, and the ALJ does not go on to step three if

the claimant fails to meet step two, but will find claimant is "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1032 (11th Cir. 1986); 20 C.F.R.

§ 404.1520(a)(4)(ii).  At step three, the claimant must show that her severe

impairment or combination of impairments meets or equals the criteria in

the Listings of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant

cannot meet or equal one of the listings, the ALJ considers at step four

whether the claimant has the residual functional capacity to perform her

past relevant work.  § 404.1520(a)(4)(iv).  If the claimant establishes she

cannot perform his past relevant work, the burden shifts to the

Commissioner at step five to show that significant numbers of jobs exist in

the national economy that the claimant can perform in light of her RFC,

age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

404.1520(d), (g); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004);

Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); McMahon v. Comm'r,

Soc. Admin., 583 F. App'x 886, 887 (11th Cir. 2014) (unpublished).  If the

Commissioner carries this burden, the claimant must prove that she cannot

perform the work suggested by the Commissioner.  Hale v. Bowen, 831

F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled and, consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.  The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished).

Opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  Although a claimant may provide a statement containing a treating physician's opinion of his remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability. *See* 20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

If the ALJ finds at step three that the claimant is disabled, and there is medical evidence of drug addiction or alcoholism, the ALJ must then determine whether the drug addiction or alcoholism was a material

contributing factor to the disability determination. 20 C.F.R. § 404.1535(a); *see also* 42 U.S.C. § 423(d)(2)(C). The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether the claimant would still be found disabled, *i.e.*, whether the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol. § 404.1535(b)(1)-(2). If the Commissioner finds that the remaining limitations are disabling, she will find that the drug addiction or alcoholism is not a contributing factor and that the claimant is disabled. § 404.1535(b)(2)(ii). Plaintiff bears the burden of providing that her drug or alcohol addiction, if any, is not a contributing factor material to disability determination—that is, she would be disabled if she stopped using alcohol. Doughty v. Apfel, 245 F.3d 1274, 1279-80 (11th Cir. 2001); Hunt v. Soc. Sec. Admin., Comm'r, 631 F. App'x 813, 815 (11th Cir. 2015) (unpublished). A finding that the alcoholism is a contributing factor material to the disability determination, precluding the award of social security benefits, will be affirmed if supported by substantial evidence. *See id.*

### III. Analysis

Plaintiff challenges the decision of the ALJ denying benefits, alleging that substantial evidence does not support the decision for several reasons:

failure to properly evaluate the testimony of Dr. Schosheim, failure to

properly question and to consider the evidence of the vocational expert,

and error in assessing Plaintiff's RFC.  ECF No. 22 at 18-22.

Plaintiff first contends that Dr. Schosheim testified that when a person

is heavily using alcohol and is also depressed and anxious, it is not

medically possible to separate out the signs and symptoms caused by their

affective disorder, anxiety, and PTSD and those caused by the use of

alcohol and marijuana.  Plaintiff contends that in light of this testimony, the

ALJ's finding, that but for her use of alcohol and drugs, Plaintiff would be

capable of returning to her past work, is not supported by substantial

evidence.  ECF No. 22 at 19-20.

Defendant, however, correctly notes that Dr. Schosheim gave his

opinion within a reasonable degree of medical certainty that Plaintiff would

likely see improvement in her functioning if she was sober.  Tr. 38.

Dr. Schosheim testified that Plaintiff's alcohol and substance use were

"material" to her problems, and if she stopped her alcohol and substance

use, he was not sure she would meet the Listings.  Tr. 36-37.  He testified

that the alcohol and marijuana increases her anxiety and affective disorder

because they are depressives, and he opined within a reasonable degree

of medical certainty that if she stopped her heavy alcohol and substance use, she would have a significant improvement.  Tr. 36-38

Dr. Schosheim also testified that if Plaintiff were not using alcohol and marijuana, she would only have mild impairments in social functioning, no to mild impairments in concentration, persistence, and pace, and no episodes of decompensation.  Tr. 53.  He testified that drinking alcohol would not reduce Plaintiff's hallucinations and improve her schizoaffective diagnosis, and that "if you drink, you have more visual hallucinations" and more auditory hallucinations.  Tr. 39.  He testified, "I think the pot and the alcohol are significant triggers for the disease process we're talking about." Tr. 54.

The ALJ did not misconstrue or improperly evaluate Dr. Schosheim's testimony.  His testimony, along with the other medical records cited by the ALJ, provided substantial evidence on which to conclude that if Plaintiff were not abusing alcohol and using marijuana, she could perform her past work and is not disabled.  Based on the medical records and expert and other testimony, the ALJ found that Plaintiff's substance abuse disorder was material to the determination of disability and is a contributing factor material to the determination of disability.  Tr. 26.  Plaintiff has not carried her burden to show the substance abuse disorder was not material or

contributing.  *See* Doughty, 245 F.3d at 1280; Hunt, 631 F. App'x at 815 (unpublished); 20 C.F.R. § 404.1535; 42 U.S.C. § 424(d)(2)(C);

Plaintiff also argues that the ALJ ignored the vocational expert's testimony that if a person misses more than one day of work a month, or were routinely tardy, they would not be able to maintain competitive employment.  ECF No. 22 at 20.  This testimony was elicited on cross-examination by Plaintiff's counsel.  This argument presumes that the record establishes that Plaintiff's impairments, if she were not abusing alcohol and using marijuana, would cause her to be absent more than one day a month and routinely tardy.  However, the hypothetical presented to the vocational expert by the ALJ did not contain any limitation stating the number of days that the Plaintiff would be absent or tardy due to her impairments.  Plaintiff has not identified any objective medical or other evidence that demonstrates Plaintiff would routinely be absent or tardy due to her remaining impairments if she were not abusing alcohol and using marijuana.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Wilson, 284 F.3d at 1227. *See also* Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).  The ALJ is not required, however, to include findings in the hypothetical that the

ALJ has properly rejected as unsupported.  *See* Crawford v. Comm'r of

Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004); McSwain v. Bowen, 814

F.2d 617, 620 n.1 (11th Cir. 1987).

Finally, Plaintiff suggests that the ALJ erred in finding Plaintiff has the

RFC to do past work and that the ALJ's finding was based only on

"supposition and conjecture" and not on substantial evidence.  ECF No. 21-

22.  To the contrary, the ALJ relied on the medical evidence in the record

and the expert testimony at the hearing.  The ALJ posed a hypothetical

assuming a person with Plaintiff's age, education and experience who

would be limited to light work.  The vocational expert testified that such a

person could perform the Plaintiff's past work as fast food worker and

waitress.  Tr. 63-64.  Dr. Schosheim testified that but for the alcohol and

marijuana use, Plaintiff had only mild or no limitations in functioning.  The

opinions of the State agency medical consultants opined Plaintiff could

perform simple and routine tasks.  Tr. 25 (citing records at Tr. 89-96, 126-

30).  The ALJ noted that the examination by Dr. Beaty did not suggest any

disabling limitation, and there were no opinions that suggest she is

disabled.  Tr. 25 (citing Records at Tr. 781-83).  Records from the Alachua

County Jail concerning Plaintiff, cited by the ALJ, indicated Plaintiff was

cleared for full work.  Tr. 25 (citing records at Tr. 545).

The Commissioner has the responsibility of assessing the RFC, 20 C.F.R. § 404.1527(d), and the determination will be upheld if based on substantial evidence.  Bell v. Bowen, 796 F.2d at 1353-54; Denomme v. Comm'r, Soc. Sec. Admin., 528 F. App'x 875, 878 (11th Cir. 2013) (unpublished).  The ALJ in this case fully explained the substantial evidence supporting the RFC determination and the finding that Plaintiff would not be disabled if she stopped the alcohol and substance abuse.  A complete review of the record does not disclose any evidence that detracts from this evidence or supports the contention that, even if Plaintiff stopped abusing alcohol and drugs, she would still be disabled—and none has been identified by Plaintiff.  Thus, the decision of the ALJ and the Commissioner that Plaintiff is not disabled and is not entitled to DIB or SSI should be affirmed.

### IV. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.  Accordingly, pursuant to 42 U.S.C § 405(g), it is respectfully recommended that the decision of the Commissioner to deny Plaintiff

Williams' applications for Social Security benefits should be **AFFIRMED**

and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on June 4, 2018.


**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## **NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.**